985 P.2d 685

**Ronnie Dean ECKHART,**
**Claimant–Appellant,**

v.

**STATE of Idaho, INDUSTRIAL**
**SPECIAL INDEMNITY FUND,**
**Defendant–Respondent.**

No. 24328.

Supreme Court of Idaho,
Boise, February 1999 Term.

Aug. 12, 1999.

Gilman & Latta, Boise, for appellant. Garry L. Gilman argued.

Hon. Alan G. Lance, Attorney General; James J. Davis, Deputy Attorney General, Boise, for respondent. James J. Davis argued.

WALTERS, Justice.

This is an appeal from a decision of the Industrial Commission denying apportionment of benefits from the Industrial Special Indemnity Fund (ISIF), after the Commission found the claimant, Ronnie Dean Eckhart, totally and permanently disabled under the odd-lot doctrine on account of his work-related injury to his back. We affirm.

## I.

## BACKGROUND

On July 30, 1990, in the employ of Western Dairymen's Association, Eckhart fell down some stairs and injured his lower back. At the time of the accident, Eckhart was forty-five years old and had worked for Dairymen's thirteen years, most recently as a long-haul driver through southern Idaho and northern Utah. Eckhart initially received chiropractic care and was released to return to work in September 1990. His back pain continued and, during the year following the injury, Eckhart also experienced right lower-extremity weakness, low-back pain radiating down his posterior right thigh, and had difficulty both in walking and in sleeping.

Eckhart underwent surgery on August 13, 1991, for fusion of L4–5 disc levels to provide relief from the pain in his back and radiating into his leg. He pursued a course of physical therapy after the surgery, which did not significantly upgrade his capacity for full-time activity. One year after his surgery, Eckhart's surgeon, Floyd Johnson, M.D., released Eckhart to work, with lifting and carrying restrictions and only occasional bending and twisting. Doctor Johnson rated Eckhart with a 25% impairment of the whole person for the persistent symptoms related to the fusion and aggravation, with bending and twisting.

Eckhart filed a worker's compensation complaint against his employer and his employer's surety for the 1990 injury, and submitted an application for hearing with the Industrial Commission. Eckhart settled his claim with his employer, Western Dairymen's Association, and proceeded to a hearing, which took place June 12, 1996, seeking to recover from the Industrial Special Indemnity Fund. Eckhart asserted a claim of total, permanent disability which he attributed to the combination of pre-existing impairments, the work-related impairment and non-medical factors, together with his prior work history, lack of education and transferable job skills.

The evidence presented at the hearing on his claim showed that Eckhart suffered from chronic back pain, fatigue due to sleeplessness, depression, and hypertension. Eckhart also suffered from pre-existing impairments of his left eye, that had been injured when he was a boy, and problems due to lacerations and tendon damage to his right arm stemming from an accident in 1988 at his home. The referee adopted Doctor Johnson's whole man impairment rating of 25%. The referee found that Eckhart was limited to lifting no more than ten pounds and to only infrequent twisting or bending, and that it was important for him to alternate sitting and standing and working at his own pace. There was medical evidence of a high blood-pressure condition and reports of dizziness, nausea and ongoing fatigue and poor sleep, for which Eckhart was referred to a psychologist. Eckhart was also diagnosed with chronic pain syndrome, fibromyalgia and a sleep disorder associated with fibromyalgia. According to the medical evidence and the testimo-

ny of the vocational experts, the referee found that pain and fatigue were Eckhart's worst problems that prevented him from working full-time. The referee also found that Eckhart has monocular vision due to his left eye injury, which does not affect his ability to sit, walk, or lift, and which has not led to any driving restrictions. The referee acknowledged that Eckhart had been given a 6% whole man impairment regarding his right arm, but that his treating physician, Doctor Bottimer, had imposed no restrictions despite the impact of the lacerations to his right dominant hand's flexibility and strength. The referee determined that Eckhart's hand and forearm injury restricted his ability to engage in some work activities that involved finger and hand flexibility and strength.

The referee made additional findings that Eckhart's physical limitations preclude him from returning to his prior relevant work and a substantial portion of the unskilled labor market. Further, the referee noted that Eckhart was fifty-one years old at the time of the hearing, with a good work history and a proven ability to supervise others; but he does not have a high school diploma or GED certificate and obtained poor grades in school; that he is essentially limited to unskilled work and possessed below-average aptitudes; that he cannot sustain work activities on a full-time basis due to his chronic pain, sleeplessness and fatigue; and that he becomes irritable and prefers to be alone.

Based on these findings, the referee considered whether Eckhart was totally and permanently disabled under the odd-lot doctrine. The referee found that Eckhart had met a *prima facie* case of odd-lot status by the third method available to prove odd-lot status, futility, and that this *prima facie* showing was not successfully rebutted with proof from the ISIF that there was an actual job that Eckhart was capable of performing and for which he had a reasonable opportunity of being hired. The referee, therefore, concluded that Eckhart was totally and permanently disabled under the odd-lot doctrine:

[A]s a result of his low-back injury at Dairymen's, Claimant is impaired to the extent that his ability to perform services is so limited in quality, quantity, or dependability that no reasonable market for his services exists.

The referee next applied an apportionment analysis to determine whether the ISIF could be held liable for payment of benefits pursuant to Idaho Code § 72–332. After examining the four elements of a *prima facie* case for apportioning liability for total permanent disability under I.C. § 72–332(1), as set forth in *Garcia v. J.R. Simplot Co.*, 115 Idaho 966, 968, 772 P.2d 173, 175 (1989), the referee concluded that Eckhart's pre-existing right arm and left eye injuries did not combine with the effects of his low-back injury to render him totally and permanently disabled. Thus, the referee determined that benefits were not apportionable and denied Eckhart's claim for recovery of benefits from the ISIF.

The Commission adopted the referee's findings of fact, conclusions of law and proposed decision, and on October 20, 1997, issued an order holding Eckhart totally and permanently disabled by the effects alone of his July 1990 low-back injury, denying Eckhart any entitlement to benefits from the ISIF pursuant to I.C. § 72–332, and dismissing his claim. Eckhart appeals, contesting the Commission's finding that his pre-existing permanent impairments of his left eye and right arm did not combine with his low-back worker's compensation injury to hold the ISIF liable for a portion of the disability benefits.

## II.

## STANDARD OF REVIEW

▮▮▮▮ The Supreme Court's appellate review of Industrial Commission decisions is limited to a determination of whether the findings of fact are supported by substantial and competent evidence. *Boise Orthopedic Clinic v. Idaho State Ins. Fund,* 128 Idaho 161, 911 P.2d 754 (1996). In reviewing a decision of the Commission, the Court will not disturb the Commission's conclusions on the weight and credibility of the evidence unless they are clearly erroneous. *Boley v. State, Industrial Special Indemnity Fund,* 130 Idaho 278, 939 P.2d 854 (1997). Thereafter, we limit our review to determining

whether the Commission correctly denied benefits after it applied the law to the relevant facts. I.C. § 72–732(4); *Morgan v. Columbia Helicopters, Inc.,* 118 Idaho 347, 796 P.2d 1020 (1990).

## III.

## DISCUSSION

Eckhart argues that the Commission's findings, that (1) he is totally and permanently disabled and (2) his pre-existing impairments did not combine with his industrial accident to justify apportionment between his employer and the ISIF, are inconsistent. Eckhart asserts that the Commission appropriately evaluated his permanent disability under I.C. § 72–425, taking into account his pre-existing physical limitations to his left eye and his right arm and all of his physical impairments resulting from the low-back injury, together with the nonmedical factors contained in I.C. § 72–430. He contends, however, that the Commission erred in finding that he was not entitled to compensation from the ISIF for that portion of the disability related to his pre-existing impairments. The only question before the Court then is whether there is substantial, competent evidence to support the Commission's finding that the ISIF is not liable for any of Eckhart's total and permanent disability.

▆▆▆ In this case, the Commission held that Eckhart was totally and permanently disabled under the odd-lot doctrine upon a finding that any efforts to find suitable employment by Eckhart would have been futile. *Dumaw v. J.L. Norton Logging,* 118 Idaho 150, 153, 795 P.2d 312, 315 (1990), *citing Huerta v. School Dist. No. 431,* 116 Idaho 43, 773 P.2d 1130 (1989). The permanent disability evaluation outlined in I.C. § 72–425 was the first in a two-step process that preceded the analysis to determine whether any liability for Eckhart's total permanent disability would be apportioned to the ISIF. *See Horton v. Garrett Freightlines, Inc.,* 115 Idaho 912, 917, 772 P.2d 119, 124 (1989). The evaluation of permanent disability under I.C. § 72–425 includes consideration of all physical impairments that were caused by the claimant's work-related injury and pre-existing impairments or physical conditions. *Horton, supra.* Whether any of the pre-existing impairments would lead to liability of the employer and its surety or the ISIF depends on the apportionment analysis. *Id.* Under I.C. § 72–332, benefits for total permanent disability are apportionable to the ISIF:

> [i]f an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability. . . .

A claimant seeking to obtain contribution from the ISIF is required, under I.C. § 72–332, to establish: (1) that there was a pre-existing impairment; (2) that the impairment was manifest; (3) that the impairment was a subjective hindrance; and (4) that the pre-existing impairment and the subsequent injury in some way combined to result in total permanent disability. *Bybee v. State, Industrial Special Indemnity Fund,* 129 Idaho 76, 80, 921 P.2d 1200, 1204 (1996), *citing Dumaw v. J.L. Norton Logging, supra.* To satisfy the "combined effects" requirement in I.C. § 72–332(1), a claimant must show that but for the pre-existing impairments, he would not have been totally permanently disabled. *Id.; Garcia v. J .R. Simplot Co.,* 115 Idaho 966, 772 P.2d 173 (1989); *Selzler v. Industrial Special Indemnity Fund,* 124 Idaho 144, 857 P.2d 623 (1993). To qualify as a permanent physical impairment, for purposes of an apportionment analysis, the impairment "must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should become employed." I.C. § 72–332(2).

▆▆▆ The determinative finding that led to the denial of ISIF liability in Eckhart's case was that Eckhart was rendered totally and permanently disabled not from a combination of the pre-existing impairments and the

work-related injury, but solely as a result of the work-related injury to his back. The referee noted the disagreement between the vocational experts as to whether Eckhart's pre-existing right arm and left eye injuries were a hindrance or obstacle to employment, and accepted the ISIF's expert's conclusions that the impairments did not hinder or obstruct Eckhart from obtaining employment. It was shown that after treatment for the many lacerations to his right arm, Eckhart was released to work and returned to his pre-injury employment, without any defect in his arm that would interfere with his ability to operate a motor vehicle safely. Although there was evidence from Eckhart's vocational expert that the arm impairment excluded Eckhart from 70% of the unskilled labor market, Eckhart himself testified that it was his back that prevented him from working or from participating in activities he had enjoyed prior to his work-related injury. Eckhart also testified that irrespective of his eye injury, he lived a normal life and was capable of working on an equal basis with others his age.

■ It is the function of the Commission, not of this Court, to weigh the evidence; and in reviewing the Commission's decision, we must view the facts and all inferences therefrom most favorably to the party who prevailed before the Commission. *Garcia, supra,* 115 Idaho at 968, 772 P.2d at 175. Relying on the testimony of the ISIF expert, the referee found that Eckhart's pain and fatigue from the low-back injury were his worst problems. Accepting Eckhart's expert's testimony, the referee determined that Eckhart was incapable of full-time employment because of fatigue; that he was essentially disabled because of low-back pain and the effects of his low-back injury: chronic pain, sleeplessness and fatigue. Because Eckhart was unable to show that his left eye and right arm pre-existing impairments were contributing causes of his total permanent disability, the referee concluded that Eckhart had failed to satisfy the "combined effects" language of I.C. § 72–332(1).

Eckhart argues for a new test to satisfy the "combined effects" requirement for the imposition of liability on the ISIF. He pro-

poses the adoption of a substantial factor test, in lieu of the "but for" test, where liability would be apportioned if the cause of the claimant's total and permanent disability is shown to be the result of both the industrial accident and a pre-existing impairment. The ISIF in response contends that no other state applies a substantial factor test and further asserts that Eckhart's argument stems from the predicament created by the Commission's finding denying apportionment in the face of Eckhart's earlier settlement with his employer out of financial need, which forecloses further compensation from the employer.

■ Having failed to establish that but for his left eye and right arm impairments he would not have been totally and permanently disabled by his low-back injury, Eckhart was not entitled to benefits from the ISIF. This result, applying the "but for" test, insures that the burden of the costs arising out of industrial injuries sustained by its employees is not unfairly borne by the employer who hires a disabled worker who is subsequently injured on the job and who, but for his pre-existing impairments, would not be totally disabled from the work-related injury. The underlying purpose of the ISIF of encouraging employers to hire workers with disabilities was accomplished in Eckhart's case.

## CONCLUSION

There was substantial, competent evidence for the Commission to find that Eckhart's back injury alone was severe enough to cause total permanent disability. Accordingly, we affirm the Commission's conclusion denying apportionment of benefits to Eckhart on account of his total permanent disability.

Costs are awarded to the respondent, ISIF; no attorney fees on appeal are allowed.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL, concur.